Levy vs. Lane et al.

## No. 9671.

### L. L. LEVY (J. T. ROSSEL, SUBROGEE) VS. MRS. M. M. ADA LANE ET AL.

Article 3304 C. C., making valid a mortgage granted on the property of another when the mortgagor subsequently acquires the ownership, requires three elements to give it application, viz:

1. "A person contracting an obligation towards another," *i. e.*, becoming his *debtor*;
2. That such *debtor* should have granted a mortgage on property of which he was not the owner;
3. That such *debtor* should "subsequently acquire the ownership of the property."

It has no application when the person who subsequently acquired the property had granted a mortgage as agent, and in the name of the then owner, without any personal guarantee, and with full exhibition of his powers embodied in authentic act of procuration referred to in the act of mortgage.

Although it was judicially determined that the procuration did not authorize the mortgage and that, therefore, it was not binding on the principal, yet, under the express terms of the Code the mandatary, having exhibited the power of attorney under which he acted, incurred no responsibility. C. C. arts. 3012 and 3013.

Hence, not having contracted a debt by virtue of the act, his subsequent acquisition of the property did not validate the mortgage.

The rights of the commissioners herein being based exclusively on the bank's claim of mortgage, and that thus falling to the ground, they have no rights or interest to set up the alleged nullities of the judicial sale attacked.

APPEAL from the Twelfth District Court, Parish of Grant. Overton, J.

*Jas. G. White, Jos. P. Hornor* and *F. W. Baker*, for the Appellant.

*J. C. Wickliffe* and *C. A. Wickliffe* for the Appellees.

The opinion of the Court was delivered by

FENNER, J.    This controversy involves the validity of the same judicial sale which was before us in the case of Lane and Husband vs. Cameron & McNeely, 36 Ann. 773.

The nullity was there asserted by Mrs. Lane, who was defendant in the hypothecary action under the judgment in which the sale was made. The principal grounds were these, viz:

1st. That it was a sale of a litigious right to one who was an officer of the court, and null under Art. 2447 C. C.

2d. That the adjudication was null because the bid did not exceed the amount of a certain prior special mortgage alleged to exist on the property in favor of the Mechanics and Traders' Bank.

By reference to the opinion, it will be seen that we rejected Mrs. Lane's demand on grounds which did not conclude the bank, which was not a party to that suit.

The same nullities are now urged by Lacombe and others, commissioners of the bank, which has been placed in judicial liquidation.

A multitude of questions are discussed with great learning and ability by counsel on either side, of which we find it necessary to consider only one.

The foundation of all the bank's rights in the premises, is the claim that the bank is a mortgage creditor of W. S. Calhoun by special mortgage prior in rank to that of the seizing creditor.

No mortgage consented by W. S. Calhoun in his own right in favor of the bank is extant. No mortgage in favor of the bank against him appears recorded in his name.

The certificate of mortgages furnished by the recorder and read at the sale contained no mention of any mortgage in favor of the bank.

While such omission cannot prejudice the rights of a duly registered mortgage-creditor, and while the duty of the sheriff in making the sale to require a bid exceeding the amount of duly recorded prior special mortgages is not, perhaps, affected by defenses which may exist against them, yet when the question is whether any such special mortgage existed or was recorded, and whether its omission from the certificate was proper and legal, we are bound to determine such questions before deciding that the adjudication was unlawful in disregarding such alleged mortgages.

The bank's judicial allegations are, substantially: that in 1870, W. S. Calhoun, acting as agent of his mother by virtue of an authentic procuration, executed a special mortgage in her name upon the property now in controversy then belonging to her, which was duly recorded and has been reinscribed, to secure certain notes made by Mary S. Calhoun through her said agent, which are now held by the bank; that subsequently it was judicially determined that the said notes and mortgages were null and void so far as Mary S. Calhoun was concerned, because in executing them her said agent acted in bad faith and exceeded his authority under the procuration; that, by reason thereof, said W. S. Calhoun became personally liable for said notes; that, since that time, he became the owner of the property mortgaged, and that, under Art. 3304 of the Civil Code, the mortgage thereby became valid and attached to the property.

If th · Article 3304 does not apply to such a case as that here presented, obviously the mortgage, which was confessedly null and inoperative against the property originally, never became valid or attached thereto, did not exist, was properly omitted from the certificate, and had no title to be considered in the adjudication.

The article is in the following words: "If a *person contracting an obligation towards another* grants a mortgage on property of which he is

not then the owner, this mortgage shall be valid if the *debtor* should ever after acquire the ownership of the property by whatever right."

An analysis of the article shows conclusively that three elements are essential to give rise to its application in any case, viz:

1st. "A person contracting an obligation towards another," *i. e.*, becoming the latter's *debtor;*

2d. That such *debtor* should have granted a mortgage on property of which he was not then the owner;

3d. That such *debtor* should subsequently "acquire the ownership of the property."

Now, did W. S. Calhoun, in executing the notes and mortgage in the name and as agent of his mother, contract any obligation towards, or become the debtor of, Nevins, the original mortgagee and author of the bank? If not, clearly his subsequent acquisition of the property did not give validity to the mortgage.

The question is conclusively solved by the following articles of the Code:

"Art. 3010. The attorney cannot go beyond the limits of his procuration. Whatever he does exceeding his power is null and void with regard to the principal, unless ratified by the latter, and the attorney is alone bound by it in his individual capacity.

"Art. 3012. The mandatary, who has communicated his authority to a person with whom he contracts in that capacity, is not censurable to the latter for anything done beyond it, unless he has entered into a personal guarantee.

"Art. 3013. The mandatary is responsible to those with whom he contracts, only when he has bound himself personally, or when he has exceeded his authority without having exhibited his powers."

Applying these principles to the facts of the instant case, we find that W. S. Calhoun acted exclusively as mandatary of his mother; that he entered into no personal guarantee or obligation; and that he exhibited his powers, which were embodied in an authentic act of procuration expressly referred to in the act of mortgage itself.

Hence, it is plain that, however he may have exceeded his authority, and however ineffective may have been the obligations created by him against his principal, W. S. Calhoun did not, by virtue of the act of mortgage, "contract any obligation towards" Nevins or become the latter's "debtor," and, therefore, was not within the operation of Art. 3304.

If, by reason of misappropriation of funds loaned to his own use, he incurred any equitable obligation of reimbursement, such obligation

would arise, not from the contract, but from subsequent acts, and would have no relation to the mortgage.

Although this solution seems sufficiently clear on the face of the Code, yet, considering the importance of the question, we have extended our investigations in every direction where we could look for additional light.

At the date of the preparation of the Code of 1825, its compilers had the advantage of the experience of France for twenty years under the Code Napoleon, during which many controversies had arisen as to its meaning and construction in the courts and amongst commentators.

The Article 3304 was not contained in the Code Napoleon, and, in its absence, there had been much difference of opinion as to whether the principle therein stated, which was derived from the Roman law and also existed in the ancient French law, was still applicable under the new system.

To avoid such controversy, the compilers of our Code inserted Art. 3304.

We have studied the commentaries of Merlin, Troplong, Duranton, Pont, and Aubry & Rau, on Art. 2129 of the French Code, under which the question arises, and have followed their references to the Roman and ancient French law, and we can find no authority or reason for extending the principle to such a case as this.

For the most elaborate discussion of the question, see, on one side, Troplong Pr. and Hy. vol. 1, p. 326, *et seq.*; on the other, Pont, vol. 2, p. 625, *et seq.*

The obvious application of Art. 3304 is to cases where a person has executed a mortgage for his own debt on property which he fraudulently or erroneously pretends to own. It might possibly be extended to the case of a mandatary who, without exhibiting his powers, has fraudulently assumed to have and to exercise authority which his principal has never delegated to him, and where his personal liability would thus directly result from the contract; but we can find no authority in the letter or spirit of the article itself, or elsewhere, justifying its extension to a mandatary, acting exclusively as such, under written procuration exhibited to the other contracting party, and who, therefore, incurred no personal obligation flowing from the contract.

This, we consider, disposes of the case in all its aspects, and dispenses us from the necessity of considering the other questions.

The bank, basing its rights entirely upon its alleged mortgage, and being found to have no mortgage, is without right or interest to invoke the cause of nullity alleged.

Judgment affirmed.

Manning, J., is recused, having at one time been of counsel for the bank in reference to this mortgage.